IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 06-377 |
| | : | |
| AKINTUNDE CRAWFORD | : | |

**SURRICK, J.**                                                                                 **JUNE 18, 2007**

<u>**MEMORANDUM & ORDER**</u>

Presently before the Court are Defendant's Motion To Compel Disclosure Of The

Confidential Informant's Identity And Motion To Compel Discovery Pertaining To Informant

Information (Doc. No. 105), and Defendant's Motion To Suppress Physical Evidence Obtained

On November 8, 2005 (Doc. No. 106), filed on behalf of Akintunde Crawford.  For the following

reasons, Defendant's Motions will be denied.

**I.      BACKGROUND**

On July 26, 2006, the grand jury returned an indictment charging Defendant Akintunde

Crawford with conspiracy in violation of 18 U.S.C. § 371, bank fraud in violation of 18 U.S.C. §

1344, aggravated identity theft in violation of 18 U.S.C. § 1028A, and aiding and abetting under

18 U.S.C. § 2.  (Doc. No. 1.)  Investigations of this matter began in 2005 when Postal Inspector

Khary Freeland began investigating a series of fraudulent bank transactions.  (Doc. No. 106 at

2.)  Freeland interviewed Kelly Taylor and Terry Hughes, co-defendants in this matter, in

January and March of 2005.  (*Id.*)  Taylor and Hughes provided information about Charles

White, the alleged ringleader of a fraudulent check-cashing scheme, and about "Raheem,"

White's brother-in-law who owned a store called "Rah's Fashion Boutique."  (*Id.*)

In the summer of 2005, FBI agent Andrew Rixham was also investigating identity theft incidents.  (*Id.* at 3.)  Rixham received information from a Confidential Source ("CS") that a man named Hasan Abdullah-Talib was in the business of conducting fraudulent loan transactions. (*Id.*)  The CS also informed Rixham that Talib obtained his fraudulent identifications from an individual known as "Raheem" at "Rah's Fashion," a store located at 5311 Oxford Avenue and that equipment used to produce these false identifications was located in the basement of the store.  (*Id.* at 3-4.)  The CS also provided numerous details about Talib's fraudulent activities, his business, residences, and cars.  (Doc. No. 109 at Ex. A.)

Rixham corroborated much of the information provided by the CS.  (*Id.* at 8-9.)  He also learned from a federal probation officer that Defendant Crawford is known as "Raheem" and that he reports his employment as manager of "Rah's Boutique" at 5311 Oxford Avenue.  (*Id.* at 8.) In addition, the probation officer informed Rixham that Crawford has "a history of making false identifications and pay stubs."  (*Id.* at 9.)  Rixham prepared an affidavit for search warrant detailing his investigation, the CS's information, and the elements that had been corroborated. (*Id.* at Ex. A.)  On November 7, 2005, the Honorable Thomas J. Rueter, United States Magistrate Judge for the Eastern District of Pennsylvania, issued a warrant authorizing agents to search for evidence of aggravated identity theft, identity theft, bank fraud, wire fraud, and mail fraud at the location of Rah's Fashion Boutique at 5311 Oxford Avenue in Philadelphia.  (*Id.*)  The warrant was addressed to "Agents of the Federal Bureau of Investigation and any Authorized Officer of the United States."  (*Id.*)

FBI agent Rixham, accompanied by Postal Inspector Freeland executed the search warrant at Rah's Fashion Boutique on November 8, 2005.  (Doc. No. 106 at 4.)  The search

yielded evidence of fraud and identity theft including, but not limited to, passport photographs that had not yet been placed in identifications, a closed account check in the name "Yamille K. Powell," allegedly used by co-defendant Terry Hughes, numerous false identifications, copies of legitimate checks, and counterfeit checks.  (Doc. No. 109 at 14 n.2.)

Defendant Crawford's Motions are interrelated.  The first Motion seeks disclosure of the identity of the CS who provided information that led to the warrant to search Rah's Fashion Boutique.  (Doc. No. 105.)  Defendant's second Motion requests that the Court suppress the physical evidence seized in the November 8, 2005 search of Defendant's business.  (Doc. No. 106.)  Defendant argues, first, that there was no probable cause for the search because the warrant was based primarily on the statements of the CS, and second, that United States Postal Inspector Freeland conducted a warrantless search of the premises when he accompanied FBI agent Rixham who actually obtained the warrant.  A hearing was held on these and other pretrial motions on May 30, 2007.  (Doc. No. 122.)

## II.     LEGAL ANALYSIS

### A.     Motion to Suppress Physical Evidence Obtained On November 8, 2005

Defendant Crawford asserts three separate arguments in support of his Motion to Suppress.  He contends:  (1) that the warrant was based on uncorroborated statements of an undisclosed source and thus, was not based on probable cause (Doc No. 106 at 4); (2) that the warrant was based on an affidavit so lacking in indicia of probable cause that the good-faith exception to the exclusionary rule should not apply (*id.* at 6); and (3) that U.S. Postal Inspector Freeland conducted a warrantless search of Defendant's business because the warrant was

directed to a separate agency for a separate investigation (*id.* at 8).  We will address each argument in turn.

>    1.    *Probable Cause for the Warrant*

Defendant contends that the evidence seized during the search of his business should be suppressed because the magistrate judge lacked a substantial basis for concluding that probable cause existed.  In support of this argument, Defendant asserts that FBI agent Rixham "relied entirely on the uncorroborated information provided by the confidential source."  (Doc. No. 106 at 5.)  Defendant contends that the affidavit, while mentioning that the source had previously provided reliable information, offered no specific indicators of reliability.  (*Id.*)  The Government responds that the FBI was able to thoroughly corroborate much of the information provided by the CS.  (Doc. No. 109 at 4.)  The Government contends that, considering the totality of the circumstances, the affidavit provided sufficient probable cause to believe that Rah's Fashion Boutique contained evidence of the crimes listed in the warrant.  (*Id.* at 9.)

The Supreme Court has made it clear that in assessing whether probable cause exists to support the issuance of a search warrant, the magistrate must do a "totality-of-the-circumstances analysis" and must make a "practical, common-sense decision."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  That decision should be based on "all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information" and should determine whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  *Id.* (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  The District Court, in reviewing the magistrate's decision must "simply . . . ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause

existed." *Id.* at 238-39 (quoting *Jones*, 362 U.S. at 271); *see also United States v. Williams*, 124 F.3d 411, 420 (3d Cir. 1997).

      In order to determine whether probable cause exists, the magistrate cannot merely "ratif[y] the bare conclusions of others." *Gates*, 462 U.S. at 239.  As a result, when relying on statements made by an unnamed source, the affiant must do more than attest to having received "reliable information from a credible person." *Id.* (quoting *Aguilar v. Texas*, 378 U.S. 108, 109 (1964)).  The corroboration of a source's statements can lead to a finding of probable cause.  As the *Gates* Court indicated:  "Our decisions applying the totality-of-the-circumstances analysis . . . have consistently recognized the value of corroboration of details of an informant's tip by independent police work." *Id.* at 241.  The *Gates* Court went on to describe numerous cases in which corroboration of the details of an informer's tip resulted in a finding of probable cause. *See id.* at 242-44.  For example, in *Aguilar*, the Court recognized that "if the police had made some effort to corroborate the informant's report at issue, 'an entirely different case' would have been presented. *Id.* at 242 (citing *Aguilar,* 378 U.S. at 109 n.1).  Similarly, the *Gates* Court referred to *Draper v. United States*, 358 U.S. 307 (1959), "the classic case on the value of corroborative efforts of police officials." *Gates*, 462 U.S. at 242.  In *Draper*, the police received information from an informant about a man who would be arriving on a train from Chicago carrying a quantity of heroin. *Id.*  Having verified every piece of information provided by the informant except the illegal activity itself, the *Draper* Court concluded that the officer "'had reasonable grounds to believe that the remaining unverified bit of [the informant's] information—that Draper would have the heroin with him—was likewise true.'" *Id.* at 243 (quoting *Draper*, 358 U.S. at 313).  The *Gates* Court found similar circumstances in the case

before it and concluded that the corroboration of much of the informant's information was sufficient for "the practical, common-sense judgment called for in making a probable cause determination." *Id.* at 244. "It is enough," the Court found, "for purposes of assessing probable cause, that 'corroboration through other sources of information reduced the chances of a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *Id.* at 244-45 (quoting *Jones*, 362 U.S. at 269, 271).

In the instant case, the FBI verified much of the information provided by the CS. For example, the CS provided information about a man named Talib who was engaged in the business of conducting fraudulent loan transactions in order to purchase property and vehicles. The CS informed the FBI, and agents confirmed, that Talib was on supervised release (Doc. No. 109 at Ex. A, pp. 3, 8), that Talib drove a black Hummer vehicle (*id.* at Ex. A, pp. 3, 9), and that Talib now drives a blue minivan (*id.* at Ex. A, pp. 9, 10). The agents observed the black Hummer parked in the driveway of a residence that Talib's probation officer confirmed was Talib's new address. (*Id.* at Ex. A, p. 3.) In addition to the Hummer, agents confirmed that Talib, using a false identity, that of a man named Mark Johnson, purchased a Mercedes Benz in September 2005. (*Id.* at Ex. A, p. 5.) A sales representative from the Mercedes Benz dealership identified Talib as the purchaser of the car. (*Id.*) On September 30, 2005, the Mercedes Benz purchased by Talib was reported as stolen to the Cherry Hill Police Department. (*Id.* at 6.) When they recovered the car, the police found a metallic briefcase inside the car that contained the following items, among others, which were subsequently turned over to the FBI: (1) a United States passport in Talib's name, (2) business cards in the name of Talib and his business, the ZII Investment Group, LLC, (3) a copy of a fake driver's license in Mark Johnson's name,

6

(4) a service notice for a Hummer that was addressed to Mark Johnson, (5) a copy of a 2004 W-2 Form for Mark Johnson, and (6) a residential lease agreement in the names of Mark Johnson and Ardyce Jones for the property at which the black Hummer had been seen.  (*Id.* at Ex. A, pp. 6-7.)

In addition, the CS provided information about a man named "Shiz," who was arrested in New Haven, Connecticut in October 2005, driving Talib's black Hummer.  (*Id.* at Ex. A, p. 9.) The agents confirmed that Shaun P. Mays, known to others detained as part of the investigation as "Shiz," was arrested on October 26, 2005 in New Haven, Connecticut after having been seen driving a black Hummer with the same license plate as the vehicle belonging to Talib.  (*Id.* at Ex. A, p. 9.)  Upon May's arrest, the black Hummer was impounded and approximately $14,000 in cash was found in the vehicle.  (*Id.*)

With regard to Crawford, the CS informed the agents that Talib obtained his fraudulent identifications from a store called "Rah's Fashion" at 5311 Oxford Avenue, Philadelphia, Pennsylvania and that the identifications were made by a man named "Raheem."  (*Id.* at Ex. A, p. 10.)  Crawford's probation officer confirmed that he is known as Raheem, reports his employment as the manager of Rah's Boutique, and has been known to make fraudulent pay stubs and identifications.  (*Id.* at Ex. A, p. 10.)

Taken together, these corroborated details, in addition to numerous other pieces of evidence described in the affidavit, supported the agent's statement that the CS had provided reliable information in the past.  The totality of the evidence clearly created a substantial basis for a finding of probable cause and was more than sufficient for the issuance of a warrant to

search Rah's Fashion Boutique.  Accordingly, we are compelled to reject Defendant's argument that the evidence should be suppressed for lack of probable cause.[1]

           2.     *Search by United States Postal Inspector*

In addition to his argument that the warrant lacked probable cause, Defendant contends that evidence obtained in the search should be suppressed because United States Postal Inspector Freeland conducted a warrantless search by accompanying FBI agent Rixham when he executed the search warrant.  The Government counters that this argument has no merit since Freeland was investigating Crawford for the same types of crimes that were at issue in the warrant.

Defendant relies primarily on *United States v. Sanchez*, 509 F.2d 886 (6th Cir. 1975), to support his contention that Freeland conducted a warrantless search.  In *Sanchez*, a police officer obtained a warrant to search a house for narcotics.  Before executing the search, the officer learned from a confidential informant that there were also explosives at the house.  *Id.* at 887-88. The officer then contacted an agent of the Alcohol, Tobacco and Firearms Bureau (ATF) of the Treasury Department, advised him of the explosives, and requested his assistance in the search. *Id.* at 888.  The ATF agent did not obtain an additional warrant for the explosives, but rather accompanied the police officers on their search of the house pursuant to the original warrant that authorized a search for narcotics.  *Id.*  The search did not lead to the seizure of any narcotics, but the ATF agent found seventy pounds of explosives, which he seized.  *Id.*  The *Sanchez* Court suppressed the evidence of the explosives, finding that the case presented two independent

---

    [1]  We need not address Defendant's argument that the good-faith exception to the exclusionary rule should not apply.  Having found that there was probable cause for the issuance of the search warrant, there is no necessity for the Government to rely on the good-faith exception.

searches that each required separate warrants.  *Id.* at 889.  Having concluded that the ATF agent

entered the premises "with local officers who were conducting a search for unrelated property,"

the court held that the action "circumvent[ed] the safeguards of the federal Constitution."  *Id.*

   Defendant's reliance on *Sanchez* is misplaced.  While the court in *Sanchez* suppressed

evidence obtained in what it deemed to be a warrantless search, the circumstances were wholly

different than those presented in the instant case.  In *Sanchez*, the only warrant authorized a

search for narcotics despite the fact that the officer and ATF agent knew there was a likelihood

that they would find explosives in the house as well.  The *Sanchez* Court suppressed the

evidence because the ATF agent was looking for wholly different evidence from that listed in the

warrant and because the ATF agent had an opportunity and probable cause to obtain his own

warrant.  *Id.*  In the instant case, Postal Inspector Freeland and FBI agent Rixham were

investigating the same crimes.  The evidence they retrieved was exactly the type of evidence

listed in the search warrant.  The warrant authorized a search for, among other things:

> Evidence, fruits, and instrumentalities of violations of federal law, including . . .
> identity theft, . . . aggravated identity theft, . . . mail fraud, . . . wire fraud, and . . .
> bank fraud including but not limited to the following:
> . . . .
> - Documents or other evidence relating to personal identification
>   information including names, dates of birth and social security account
>   numbers;
> - Driver's licenses, social security cards, credit cards or other personal
>   identification documents;
> - Equipment, materials or other evidence relating to the production of
>   personal identification documents;
> - Bank account records, including withdrawal slips, deposit slips, wire
>   transfer memoranda, and account statements;
>   . . . .

(Doc. No. 109 at Ex. A, Attachment A to Warrant.)  In conducting the search, Freeland and

Rixham retrieved:  passport photographs that had not yet been placed in identifications,

numerous false identifications, copies of legitimate checks, and counterfeit checks (Doc. No. 109 at 14 n.2), exactly the types of materials listed in the warrant.  Thus, while *Sanchez* may support the proposition that items that officers believed to be on the property but that were not the objects of the warrant should be suppressed,[2] in this case, both officers were investigating the same crimes and the evidence retrieved was exactly the type anticipated in the warrant.

In addition to the inapplicability of *Sanchez*, Postal Inspector Freeland's search was justified by the warrant itself and by federal law that permits authorized officers to execute a search warrant.  The warrant itself was directed to:  "Agents of the Federal Bureau of Investigation and any Authorized Officer of the United States."  (Doc. No. 109 at Ex. A.) Federal law permits a search warrant, in all cases, to be "served by any of the officers mentioned in its direction or by an officer authorized by law to serve such warrant, but by no other person, except in aid of the officer on his requiring it, he being present and acting in its execution."  18 U.S.C. § 3105.  United States Postal Inspectors are designated to investigate criminal matters

---

[2]  The court in *Frazier v. State*, 537 So. 2d 662 (Fla. Dist. Ct. App. 1989), clarified that *Sanchez* and other similar cases

> essentially announce a rule that items which are not the objects of a search warrant should be suppressed as being obtained in violation of the fourth amendment where, although the police enter a home pursuant to a valid search warrant, some of their number are admittedly far more interested in searching for and seizing items not listed on the warrant.  The announced basis of the rule is that the otherwise valid warrant was obtained in bad faith or as a subterfuge for a search for different items.

*Id.* at 664 (discussing *United States v. Sanchez*, 509 F.2d 886 (6th Cir. 1975), *United States v. Tranquillo*, 330 F. Supp. 871 (M.D. Fla. 1971), and *State v. Watkins*, 237 N.W.2d 14 (S.D. 1975)).

related to the United States Postal Service and, in this capacity, may "serve warrants and subpoenas issued under the authority of the United States . . . and make seizures of property as provided by law."  18 U.S.C. § 3061.  Because the warrant was directed to "any Authorized Officer of the United States" and because postal inspectors are such authorized officers, the fact that Freeland accompanied Rixham was perfectly proper.  *See In re Se. Equip. Co. Search Warrant*, 746 F. Supp. 1563, 1577 (S.D. Ga. 1990) (finding that DOD Investigator "had two avenues upon which he could validate his presence on [the] premises, either as an agent authorized to execute search warrants or as an aid utilized by [the Agent to whom the warrant was directed] in the execution of the warrant"); *see also United States v. Kimberlin*, 805 F.2d 210, 229 (7th Cir. 1986).  Accordingly, we will deny Defendant's request to suppress the evidence obtained in the search.

**B.      Motion To Compel Disclosure Of The Confidential Informant's Identity And Motion To Compel Discovery Pertaining To Informant Information**

In his second Motion, Defendant requests that the Court compel disclosure of the identity of the CS.  Defendant argues that the CS's information was the primary if not the entire basis for the investigation of Crawford and that, as a result, Defendant is entitled to challenge the CS's reliability.  (Doc. No. 105 at 4.)  The Government responds that disclosure of the CS's identity could endanger the CS, could reveal government investigative techniques, and could foreclose use of the CS in other investigations.  (Doc. No. 109 at 16.)

Courts, citing the informer's privilege, traditionally protect the identity of a confidential informant who provides information to law enforcement.  *See Roviaro v. United States*, 353 U.S. 53, 59 (1957).  "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement.  The privilege recognizes the obligation of citizens to

11

communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* At the same time, the privilege can be limited in certain circumstances. "Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61; *see also United States v. Jiles*, 658 F.2d 194, 198-99 (3d Cir. 1981) ("In both *Roviaro* and *McCray*, the Court specifically articulated those circumstances in *Roviaro* which required the informant's identity to be released: (1) the possible testimony was highly relevant; (2) it might have disclosed an entrapment; (3) it might have thrown doubt upon the defendant's identity; and (4) the informer was the sole participant other than the accused, in the transaction charged." (citing *McCray v. Illinois*, 386 U.S. 300, 310-11 (1967); *Roviaro*, 353 U.S. at 63-65)); *see also United States v. Brenneman*, 455 F.2d 809, 811 (3d Cir. 1972) ("In order to tip the scales in favor of disclosure, there must be some indication that access to the informer may be 'helpful to the defense of an accused' or 'essential to a fair determination of a cause.'" (citing *Roviaro*, 353 U.S. at 60-61)). However, mere speculation by the defendant that the informant's identity or information from the informant will help in the defense is not sufficient. *See United States v. Bazzano*, 712 F.2d 826, 839 (3d Cir. 1983) ("[M]ere speculation as to the usefulness of the informant's testimony to the defendant is insufficient to justify disclosure of his identity." (quoting *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir. 1977))); s*ee also Brenneman*, 455 F.2d at 811.

In the instant case, Defendant has failed to offer anything beyond mere speculation as to his need for disclosure of the CS's identity. The Government has confirmed that it used the CS's

information only for purposes of obtaining a search warrant and demonstrating probable cause.

We have already concluded that there was probable cause for the warrant based on the agent's

corroboration of much of the CS's information along with evidence gathered from other sources.

As a result, the challenge to the CS's reliability does not help Defendant in this regard. *See*

*Bazzano*, 712 F.2d at 839 ("Where an informant's role was in validating a search, disclosure of

his identity is not required."). In addition, the Government has indicated that the CS will not be

testifying at Defendant's trial (Doc. No. 109 at 19) and thus, the disclosure of the CS's identity

cannot be deemed essential to a fair determination of the cause. Defendant has not shown that

the identity of the CS would disclose an entrapment, that it would throw doubt upon the

defendant's identity, or that the informer was the sole participant, other than the accused, in the

transaction charged. As a result, we are compelled to deny Defendant's request to compel

disclosure of the CS's identity.[3]

## III.   CONCLUSION

For the foregoing reasons, Defendant's motions will be denied. There is no question that

sufficient probable cause existed to justify issuance of a search warrant for Rah's Fashion

Boutique nor is there any doubt that Postal Inspector Freeland's presence at the search was

---

[3] The Government also argues that Defendant is not entitled to a *Franks* hearing, in which he could challenge the agent's good faith in making statements in the warrant affidavit. *See Franks v. Delaware*, 438 U.S. 154 (1978). (Doc. No. 109 at 20.) Defendant made clear during the May 30, 2007 hearing that he was not requesting a *Franks* hearing. (Hr'g Tr., May 30, 2007, Doc. No. 122 at 23.)

Defendant's Motion also requested that the Government be compelled to produce all exculpatory information about its informant. (Doc. No. 105 at 9.) The Government responds that it has already "produced all *Brady* and *Giglio* material in its files[] and will continue to do so if any become[s] available in the future." (Doc. No. 109 at 21.) The Government confirmed this at the May 30, 2007 hearing. (Hr'g Tr., Doc. No. 122 at 7-8.)

proper.  As a result, we will deny Defendant's Motion to Suppress evidence obtained during that search.  In addition, Defendant has failed to demonstrate sufficient need for the disclosure of the identity of the Government's confidential informant and, as a result, Defendant's motion seeking disclosure will be denied.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :
                                  :        CRIMINAL ACTION
          v.                      :
                                  :        NO. 06-377
                                  :
AKINTUNDE CRAWFORD                 :

**ORDER**

AND NOW, this 18th day of June, 2007, upon consideration of Defendant's Motion To Compel Disclosure Of The Confidential Informant's Identity And Motion To Compel Discovery Pertaining To Informant Information (Doc. No. 105), and the Motion To Suppress Physical Evidence Obtained On November 8, 2005 (Doc. No. 106), filed by Akintunde Crawford, and all papers submitted in support thereof and in opposition thereto, it is ORDERED that the Motions are DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge