IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION NO. 06-377-5 |
| v. | : | |
| | : | CIVIL ACTION NO. 14-0467 |
| AKINTUNDE CRAWFORD | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                   **SEPTEMBER  16 , 2015**

Presently before the Court is Petitioner Akintunde Crawford's *pro se* Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255. (ECF No. 574.)  For the following reasons, Petitioner's Motion will be denied.[1]

**I.    BACKGROUND**

This case involves a bank fraud scheme that targeted four banks in the Philadelphia area from approximately February 2004 to November 2005.  *See United States v. Norman*, 465 F. App'x 110, 113 (3d Cir. 2012).  Petitioner, along with nine other defendants, conspired to defraud the four banks out of hundreds of thousands of dollars through repeated fraudulent transactions.  Specifically, defendants unlawfully obtained personal identification information, including names, dates of birth, addresses, and social security numbers, of customers at the four banks.  *Id.*  Defendants then recruited check-runners to pose as the customers and cash counterfeit or closed-account checks or withdraw money from the customers' accounts.  *Id.* at 113-14.  Petitioner Crawford primarily assisted the scheme by preparing fake photo IDs for the walk-in transactions.  *Id.* at 114.

---

[1] Crawford is a *pro se* litigant.  We construe his pleadings liberally.  *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999).

At trial, the government presented overwhelming evidence connecting Petitioner to the conspiracy. One of Petitioner's co-conspirators, Terry Hughes, cooperated with the Government and testified that co-defendant White would frequently go to Rah's Fashion Boutique, where Petitioner worked, immediately before and after the check-runs. *Id.* at 117. Hughes testified that after one of the check-runs, he saw Petitioner and White counting the fraudulently-obtained money. *Id.* Hughes also testified that Petitioner provided him with clothes to wear for one of his bank runs. *Id.* at 117-118.

In addition, the Government presented evidence from a November 2005 search of Rah's Fashion Boutique. *Id.* at 118. Incriminating documents, including counterfeit driver's licenses and passport photographs of unidentified individuals, were discovered inside an envelope that was addressed to Petitioner. *Id.* In addition to the envelope, evidence of a manual for creating IDs, a computer disk containing an image of a fake Delaware driver's license bearing Crawford's photo, and an application for a Commerce Bank account detailing a victim's personal information, was presented at trial. *Id.*

On September 6, 2007, based upon the overwhelming evidence, a jury found Petitioner guilty of conspiracy to commit bank fraud and identity theft, in violation of 18 U.S.C. § 371; bank fraud, in violation of 18 U.S.C. § 1344; and aggravated identity theft, in violation of 18 U.S.C. § 1028A. *Id.* at 114.

## II.    PROCEDURAL HISTORY

On November 19, 2008, Crawford was sentenced to 212 months in prison. (J., ECF No. 361) Crawford and his co-defendants filed an appeal on December 19, 2010. *See Norman*, 465 F. App'x at 110. On March 7, 2012, the Third Circuit affirmed Crawford's convictions, but his sentence was vacated and the case was remanded for resentencing. (USCA J., ECF No. 442.)

On March 15, 2013, Petitioner was resentenced to 108 months in prison.  (Am. J., ECF No. 569.)  Crawford did not file a notice of appeal.  On July 29, 2013, Crawford filed a Motion for Miscellaneous Relief under Federal Rule of Civil Procedure 60(b).  (Pet'r's Mot. Misc. Relief, ECF No. 568.)  On January 21, 2014, Crawford filed this 18 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.  (Pet'r's Mot., ECF No. 572.)  A Memorandum in Support was filed on February 10, 2014.  (Pet'r's Mem., ECF No. 574.)  The Government filed a Response on March 4, 2014.  (Gov't's Resp., ECF No. 575.)   Petitioner submitted a Reply on July 28, 2014.  (Pet'r's Reply, ECF No. 578.)

### III.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside, or correct a sentence on the ground that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Under this provision, relief is generally available "to protect against a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. DeLuca*, 889 F.2d 503, 506 (3d Cir. 1989) (citation omitted).

An evidentiary hearing must be held on a § 2255 petition "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  *Gov't of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989).  The court is to construe a petitioner's *pro se* pleading liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), but "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation."  *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

## IV. DISCUSSION

In Petitioner's 28 U.S.C. § 2255 Motion, he alleges eight grounds for relief: (1) trial counsel was ineffective in failing to obtain exculpatory evidence; (2) trial counsel was ineffective in failing to notify Petitioner of a modification to a stipulation entered at trial; (3) Petitioner is not responsible for the loss amount associated with Count II of the Indictment; (4) the Jury should have determined the loss amount associated with Count II of the Indictment; (5) the sentencing court improperly applied criminal history points for an intervening conviction after the original sentencing; (6) the sentencing court improperly used the 2006 guideline manual at sentencing, instead of the appropriate 2004 guideline manual; (7) Petitioner was improperly ordered to pay restitution to Commerce Bank; and (8) three prior convictions were improperly included in Petitioner's criminal history category determination at sentencing.

### A. Timeliness

Section 2255 motions are subject to a one-year statute of limitations. Under subsection (f), that one-year clock starts to run from the latest of the following dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

A conviction becomes final in the context of § 2255 when the period for filing an appeal of a new sentence expires. *Guishard v. United States*, No. 07-149, 2009 WL 3763817, at *3 (E.D. Pa. Nov. 5, 2009) (citing *Barnett v. Caroll*, 514 F. Supp. 2d 619, 622 (D. Del. 2007)); *see also United States v. Colvin*, 204 F.3d 1221, 1222 (9th Cir. 2000) (Amended judgment entered on remand became final "when the time has passed for appealing the district court's entry of the judgment."). Crawford was resentenced on March 15, 2013. The statute of limitations for Crawford's § 2255 motion began to run on the date the time for filing an appeal of his new sentence expired, thirty days after resentencing, which was Monday, April 15, 2013. Crawford filed the instant Motion on January 21, 2014. The Motion is timely.

### B.     Ground One: Trial Counsel Was Ineffective in Failing to Obtain Exculpatory Evidence

Petitioner argues that trial counsel was ineffective in failing to obtain evidence that he claims could have changed the outcome of the case. (Pet'r's Mem. 2.) In support of this claim, Petitioner cites multiple instances of counsel's alleged ineffectiveness.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a defendant must show that: (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Id.* at 687.

To establish the first prong, deficient performance, a defendant must show that counsel's performance "fell below an objective standard of reasonableness." *Buehl v. Vaughn*, 166 F.3d 163, 169 (3d Cir. 1999) (citing *Strickland*, 466 U.S. at 688). The measure of counsel's

performance is "whether counsel's assistance was reasonable considering all the circumstances," including "[p]revailing norms of practice." *Strickland*, 466 U.S. at 688.

Under *Strickland*, counsel is presumed to have acted within a range of "reasonable professional assistance," and the defendant carries the burden of "overcoming the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted). While a defendant has a right to effective assistance of counsel, he is not guaranteed the right to a perfect trial. *See Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002). "To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable." *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1435 (3d Cir. 1996). Judicial scrutiny of counsel's performance is highly deferential because "there are countless ways to provide effective assistance in any given case." *Strickland*, 466 U.S. at 689

Moreover, the Supreme Court has made it clear "that the authority to make decisions regarding the conduct of the defense in a criminal case is split between criminal defendants and their attorneys." *Weatherwax*, 77 F.3d at 1433 (citing *Jones v. Barnes*, 463 U.S. 745, 751 (1983)). The authority to make certain fundamental decisions regarding the case rests with the accused, such as "whether to plead guilty, to waive the right to trial by jury, to testify in one's own behalf, to take an appeal, or to waive the right to counsel." *Id.* However non-fundamental issues of a criminal trial, such as tactical choices about trial strategy, are reserved for counsel's judgment. *See Strickland*, 466 U.S. at 689; *see also Wainwright v. Sykes*, 433 U.S. 72, 93 (1977) (Burger, C.J., concurring) ("[Counsel], not the client, has the immediate and ultimate responsibility of deciding if and when to object, which witnesses, if any, to call, and what defenses to develop.").

6

With respect to *Strickland's* second prong, prejudice, the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* Furthermore, "[t]he effect of counsel's inadequate performance must be evaluated in light of the totality of the evidence at trial." *United States v. Gray*, 878 F.2d 702, 711 (3d Cir. 1989).

Here, Petitioner alleges that his counsel failed to obtain the sign-out sheets from the halfway house where he was staying, which he would have used to challenge his connection to the Government's evidence obtained from Rah's Fashion Boutique. (Pet'r's Mem. 2.) Petitioner attaches, as Appendix A to his Memorandum, a sign-out sheet detailing that Petitioner signed out to Rah's Fashion Boutique from his halfway house on April 12th, the day the federal agents conducted an undercover search of Rah's Fashion Boutique, and on April 11th, the day before the search. (Pet'r's Mem. 16, App. A.) This evidence placing Petitioner at Rah's Boutique the day before and the day of the search appears to be inculpatory, not exculpatory. Moreover, it does nothing to undermine confidence in the verdict. *See Strickland*, 466 U.S. at 694.

Petitioner next alleges that his counsel failed to provide other discovery to him, including a "composition book" which indicates that co-defendant Charles White had a credit for a suit that co-defendant Terry Hughes testified he received from Petitioner. Hughes provided no testimony with regard to who paid for the suit. (Pet'r's Mem. in Supp. 5.) Again, Petitioner fails to show how this evidence would have in any way affected the outcome of the case. *See Strickland*, 466 U.S. at 694. Petitioner likewise alleges that his counsel failed to challenge the testimony of co-defendant Hughes about seeing White and Petitioner split up money at a pizza shop next to Rah's, after a bank run. Petitioner argues that there is no pizza shop next to Rah's. Petitioner

provides nothing in support of this argument.  Moreover, counsel's choice to not challenge the witness about his testimony was a tactical decision, to which we accord deference.  Even assuming this tactical decision was in error, it was not prejudicial given the overwhelming evidence presented against Petitioner.  *See Strickland*, 466 U.S. at 694; *see also Norman*, 465 F. App'x at 117-18.

Finally, Petitioner seems to argue that counsel should have challenged a damaging piece of evidence presented at trial – a disk containing an ID bearing Petitioner's photo and another person's name – which was found in the basement of Rah's Fashion Boutique.  (Pet'r's Mem. 6.)  Petitioner alleges that law enforcement officials planted this evidence.  (*Id.* at 6-7.)  Counsel was not ineffective for failing to advance such a baseless argument.  *United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") (citation omitted).

### C. Ground Two: Trial Counsel Was Ineffective in Failing to Notify Petitioner of a Stipulation Modification

Petitioner argues that trial counsel was ineffective for failing to notify him of a modification to a stipulation made during trial.  (Pet'r's Mem. in Supp. 7-8.)  Specifically, Plaintiff alleges that he had agreed to the following stipulation:  "Crawford reported his employment as the manager of Rah's Fashion Boutique from September 04 to October 05."  (*Id.* at 7.)  Petitioner claims that his counsel agreed to modify the stipulation, without his consent as follows:  "Crawford frequented Rah's Fashion Boutique during the Month of November 05."  (*Id.*)

In order to establish a claim of ineffective assistance, a defendant must demonstrate both prongs of the *Strickland* standard.  Here, regardless of whether counsel consulted with him prior to entering the stipulation, the modification did not prejudice Petitioner.  The record reveals that

8

there was more than sufficient evidence presented at trial for a jury to connect Petitioner to Rah's Fashion Boutique during the course of the conspiracy, even without the stipulation. *See Norman*, 465 F. App'x 117-118. As such, counsel's decision to agree to the modified stipulation was not prejudicial to Petitioner. *See Strickland*, 466 U.S. at 694-95.

Furthermore, counsel maintains the ultimate authority to decide issues concerning "what evidence should be introduced, what stipulations should be made, what objections should be raised, and what pre-trial motions should be filed." *United States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992); *see also Weatherwax*, 77 F.3d at 1431-32. Here, there is evidence that the decision to modify the stipulation was a strategic choice, undertaken so that the Government would not call Petitioner's probation officer to testify. (Gov't's Resp. 5 (citing August 30, 2007 Tr. at 214-15).) We defer to counsel's judgment when making tactical decisions about trial strategy. *See Weatherwax*, 77 F.3d at 1431-32. Moreover, this decision made perfect sense. Petitioner's claim that his trial counsel was ineffective for failing to notify him of a modification to a stipulation made during trial is without merit.

> **D. Ground Three: The Loss Amount Associated With Count II of the Indictment**

Petitioner argues that the evidence presented at trial demonstrates that he had no connection to the conduct alleged in Count II of the Indictment, related to the "Commerce Bank drive-thru fraud." (Pet'r's Mem. 8.) Petitioner asks the Court to reconsider the determination that Petitioner was responsible for the loss amount related to Count II.

A motion pursuant to 28 U.S.C. § 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal.'" *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986)).

9

Here, Petitioner raises the same argument that he raised on direct appeal to the Third Circuit. *See Norman*, 465 F. App'x at 123-25. On direct review, the Third Circuit rejected Petitioner's arguments, affirming this Court's determination of the loss attributable to him. *Id.* at 125. Another review by this Court at this time would be improper. *See Withrow v. Williams*, 507 U.S. 680, 721 (1993) ("If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations."); *see also DeRewal*, 10 F.3d at 105 n.4 ("Section 2255 generally may not be employed to re-litigate questions which were raised and considered on direct appeal."). Petitioner's argument is without merit.

In Petitioner's Reply to the Government's Response, Petitioner adds an additional claim of ineffective assistance of counsel related to this same ground. Specifically, Petitioner alleges that his counsel was ineffective for not raising this issue on direct appeal. (Pet'r's Reply 4.) Petitioner's argument is obviously without merit. Petitioner's counsel did in fact raise this issue on direct appeal to the Third Circuit. *See Norman*, 465 F. App'x at 125 ("[T]he walk-in and drive-through operations do not represent multiple conspiracies, but merely different schemes within the same conspiracy. Moreover, even if this distinction were somehow relevant here, the record contradicts Crawford's claim that he was only involved with walk-ins."). Petitioner's counsel was not ineffective and this claim is again denied.

      **E.**      **Ground Four: The Jury Should Have Determined the Loss Amount Associated With the Conduct Supporting Count II of the Indictment**

The Petitioner claims that his rights were violated when this Court failed to allow the jury to be the factfinders as to the "losses pursuant to U.S.S.G. 2B1.1(b)(1)(H)." (Pet's Mem. 10.) Specifically, Petitioner alleges that he was exposed to a sentence exceeding the statutory

10

maximum of 20 years as a result of judicial fact finding at resentencing, in violation of the Supreme Court's holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013). (*Id.*)

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court reiterated this principle in *Alleyne*, and added that it also applies to a fact that increases a statutory mandatory minimum sentence. 133 S. Ct. at 2163. However, judicial factfinding that increases a sentence *within* the minimum and maximum range of the sentencing guidelines is permitted. *See United States v. Smith*, 751 F.3d 107, 117 (3d Cir. 2014) ("*Alleyne* did not curtail a sentencing court's ability to find facts relevant in selecting a sentence *within* the prescribed statutory range.").

Here, Crawford seems to challenge the length of his sentence for the Bank Fraud, pursuant to 18 U.S.C. § 1344, which carries a maximum sentence of 30 years and no mandatory minimum sentence. Prior to resentencing, the court determined that Petitioner was responsible for a loss amount greater than $1,000,000, rather than a loss amount greater than $400,000 but less than $1,000,000. This enhanced the offense level from 14 to 16. (Gov't's Sentencing Mem. 1, ECF No. 550.) However, this two-level enhancement did not subject Petitioner to a sentence greater than the 30-year maximum. Nor did it subject Petitioner to a mandatory minimum sentence. Because Crawford was not subject to a statutory mandatory-minimum sentence based on a finding made by the court, his reliance on *Alleyne* is misplaced. Petitioner was sentenced to 108 months in prison, a sentence well below the 30-year statutory maximum under 18 U.S.C. § 1344. (Am. J. 2.) Therefore, this claim fails.

### F. Ground Five: Calculation of Criminal History Category After the Original Sentencing

Petitioner claims that the Court erred by including a conviction, which occurred after the original sentencing, in the calculation of his criminal history category at resentencing. (Pet'r's Mem. in Supp. 11-12.) Specifically, Petitioner claims there is a disparity between the increase in his criminal history points, which included his intervening conviction, and the criminal history points determined for his co-defendant, Merin, which were not increased for an intervening conviction. (*Id.*)

The Government argues that Petitioner's claim is procedurally defaulted because he did not raise this issue on appeal before filing his § 2255 motion. (Gov't's Resp. 7.)[2] There is case law to support this argument. *See United States v. Meza*, Civ. No. 06-4393, Crim. No. 02-173-06, 2007 WL 518582, at *1 (E.D. Pa. Feb. 12, 2007) ("Since Petitioner failed to raise either of these sentencing issues by filing a direct appeal following his resentencing, he is precluded from pursuing them through a § 2255 collateral attack absent a showing of cause and prejudice."). Nevertheless, Petitioner's claim is meritless.

Congress has directed that "[n]o limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the

---

[2] A federal prisoner is procedurally barred from collaterally attacking his sentence under § 2255 when the attack is based upon issues that could have been objected to at trial or that could have been, but were not raised on direct appeal. *United States v. Ballard*, No. 03-180-01, 2009 WL 637384, at *5 (E.D. Pa. Mar. 11, 2009) (citing *United States v. Frady*, 456 U.S. 152, 164-65 (1982)). Procedural default will be excused if a petitioner can demonstrate both (1) cause for not raising the claim and (2) prejudice. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A petitioner who cannot demonstrate the requisite cause and prejudice necessary to excuse procedural default may still be granted relief if she can demonstrate that it would be a miscarriage of justice for the court to deny relief and also persuasively demonstrates her innocence. *See Bousley v. United States*, 523 U.S. 614, 622, 632 (1998). Ineffective assistance of counsel claims are properly brought in § 2255 motions. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.  The sentencing court "'may justify an increased sentence by affirmatively identifying relevant *conduct* or *events* that occurred subsequent to the original sentencing proceedings.'"  *United States v. Bryce*, 287 F.3d 249, 257 (2d. Cir. 2002) (quoting *Wasman v. United States*, 468 U.S. 559, 572 (1984)) (emphasis in original).  An intervening conviction is an objective and reasonable factor justifying an increased sentence after a remand.  *See Wasman*, 468 U.S. at 571-72 (determining the sentencing court's consideration of new convictions is "manifestly legitimate."); *see also United States v. Adams*, 771 F.3d 783, 789 (3d Cir. 1985).

Here, the Court acted appropriately when it included Petitioner's subsequent conviction in the calculation of Petitioner's criminal history category at resentencing.  *United States v. Smith*, 437 F. App'x 110, 113-14 (3d Cir. 2010).  The conviction was a subsequent event that justified an increased sentence.  Therefore, Petitioner's claim is without merit.

### G. Ground Six: *Ex Post Facto*

Petitioner claims that the Court violated the *Ex Post Facto* Clause by using the 2006 guideline manual at sentencing instead of the 2004 guideline manual.  (Pet'r's Mem. 12.)  Specifically, Petitioner argues that his crimes, which occurred from February 2004 to May 2005, should not be subject to the mandatory minimum sentence provided by 18 U.S.C. § 1028A, because § 1028A did not become effective until November 1, 2005.  (Pet'r's Mot. 15, Pet'r's Mot. App. A.)

The Government argues that Petitioner's claim is procedurally defaulted because he did not raise this claim on direct appeal.  (Gov't's Resp. 8.)  While there is authority to support this argument, *see United States v. Travillion*, 759 F.3d 281, 288 (2014), Petitioner's claim is also without merit.

13

Petitioner's assertion is incorrect.  The effective date of 18 U.S.C. § 1028A is July 15, 2004.  The date Petitioner references in Appendix A to his Motion is the date § 2B1.6 of the Sentencing Guidelines, an amendment that concerns sentencing adjustments for violations of § 1028A, became effective.  It is not the effective date of the statute itself.  Petitioner's claim is meritless.

### H.     Ground Seven: Petitioner Was Properly Ordered to Pay Restitution

Petitioner next challenges the order to pay restitution to Commerce Bank because he was not charged in Count II of the Indictment, which was the substantive bank fraud count involving Commerce Bank.  (Pet'r's Mem. 12.)

The Government argues that Petitioner's claim is procedurally defaulted because he did not raise this claim on direct appeal.  (Gov't's Resp. 9.)  Again, there is authority to support this argument.  *See Travillion*, 759 F.3d at 288.  However, Petitioner's claim is meritless in any event.

A petitioner may not challenge a restitution order in a § 2255 motion.  "'Habeas lies to allow attacks on wrongful custodies.'" *United States v. Trimble*, 12 F. Supp. 3d 742, 746 (E.D. Pa. 2014) (quoting *Kaminski v. United States*, 339 F.3d 84, 89 (2d Cir. 2003)).  Since an order for restitution does not encompass a claim to be released from custody, it is not cognizable in a § 2255 motion.  *Id.* at 745-746.

Further, "a challenge to a restitution order brought under the guise of an ineffective assistance of counsel claim is also not cognizable in a habeas petition because it does not seek release from custody." *Id.* at 746; *see also Shephard v. United States*, 735 F.3d 797, 798 (8th Cir. 2013); *United States v. Thiele*, 314 F.3d 399, 402 (9th Cir. 2002); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996); *United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994).  Nor

does a challenge to a restitution order become cognizable just because the defendant also happens to be subject to custodial penalties at the same time. *See Trimble*, 12 F. Supp. 3d at 745-46. Petitioner's challenge to the order of restitution is rejected.

### I. Ground Eight: Petitioner's Criminal History Category Was Properly Calculated

Finally, Petitioner claims that three of his prior convictions were erroneously included in his criminal history category determination. Specifically, Petitioner claims that the sentences listed in paragraphs 98, 100, and 106 of his Pre-Sentencing Report ("PSR"), which added an additional three criminal history points at resentencing, should not have been included. (Pet'r's Mem. 14.)

The Government argues that Petitioner's claim is procedurally defaulted because he did not raise this claim on direct appeal. (Gov't's Resp. 9.) While *Travillion*, *supra*, supports this argument, Petitioner's claim that the three prior convictions were incorrectly included in the determination of his criminal history category at resentencing, is also without merit.

Under § 4A1.2 of the Guidelines, a defendant's criminal history calculation includes "[a]ny other prior sentence that was imposed within ten years of the defendant's *commencement of the instant offense*," rather than the date of the current sentencing. U.S.S.G. § 4A1.2(e)(2) (emphasis added). "The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1).

The prior sentence that Petitioner challenges, listed in Paragraph 98 of the PSR, was imposed on August 8, 1998. This conviction was within 10 years of the conduct at issue, which began in February 2004. (Indictment 16.) Petitioner also challenges the inclusion of the sentence listed in Paragraph 106, imposed on August 6, 1998. This prior sentence is also within

10 years of the beginning of the conduct at issue here.  Therefore, the prior sentences listed in paragraphs 98 and 106 of the PSR were properly included in Petitioner's criminal history category at resentencing.

Petitioner next asserts that the prior sentences listed in Paragraphs 100 and 102 of the PSR were improperly included in the determination of his criminal history category because they were imposed on the same day.  (Pet'r's Mem. 14.)  Under § 4A1.2 of the Guidelines, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)."  U.S.S.G. § 4A1.2(a)(2).

Here, the sentences listed in Paragraphs 100 and 102 were both imposed on May 28, 1997.  However, the offenses leading to these sentences were separated by an intervening arrest.  The sentence in Paragraph 100 was imposed for an arrest that occurred on September 10, 1996, and the sentence in Paragraph 102 was imposed for a separate arrest that occurred on November 29, 1996.  (*Id.*)  Due to the intervening arrest, the sentence listed in Paragraph 100 was properly included in Petitioner's criminal history category as separate from the sentence listed in Paragraph 102.  *See United States v. Wood*, 526 F.3d 82, 87 (3d Cir. 2008) ("[T]he imposition of sentences for multiple offenses at the same time by the same judge does not render the cases consolidated for sentencing.") (internal quotation marks omitted).   Petitioner's claim regarding the prior sentences listed in Paragraphs 98, 100, and 106 is without merit.

### J. Certificate of Appealability

To qualify for a certificate of appealability, a petitioner must "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As discussed above, Petitioner has

raised no viable claims. No reasonable jurist would disagree with our assessment of Petitioner's claims. Accordingly, a certificate of appealability will not issue.

## V.  CONCLUSION

For the foregoing reasons, Petitioner Akintunde Crawford's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence will be denied and no certificate of appealability will issue.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**
